[Crim. No. 7091. Second Dist., Div. One. Dec. 6, 1960.]

THE PEOPLE, Respondent, v. BILL JOHNSON, Appellant.

Samuel C. McMorris for Appellant.

Stanley Mosk, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

LILLIE, J.—Defendant was found guilty of burglary by the trial court, which also denied his motion for a new trial; he appeals from the judgment and order denying the motion. Assigned as error is the insufficiency of the evidence to support his identity as a participant and his entry upon the premises, the denial of right to counsel, the admission of his confession, and the denial of his motion for new trial.

Viewing the evidence in the light most favorable to respondent (*People* v. *Newland*, 15 Cal.2d 678 [104 P.2d 778]), and bearing in mind the rule that all intendments are in favor of the judgment of conviction (*People* v. *Crooker*, 47 Cal.2d 348 [303 P.2d 753]; *People* v. *Lindley*, 26 Cal.2d 780 [161 P.2d 227]; *People* v. *Kerr*, 37 Cal.2d 11 [229 P.2d 777]) and that a reviewing court may not reverse the same for insufficiency of evidence unless it is made clearly to appear that upon no hypotheses whatsoever is there sufficient substantial evidence to support the judgment (*People* v. *Jones*, 36 Cal.2d 373 [224 P.2d 353]), we are satisfied that the evidence is more than ample to establish defendant's participation in the burglary.

Nicholas Pawluchenko left his home around 11 p.m. after closing and securing the premises; shortly after midnight he returned and saw two men running away from his house, one carrying his wife's radio and a paper bag. He gave chase and "yelled, 'Thief! Burglar!'" They ran into a lamp-post which was "right across the street," under which defendant's car was parked, where Pawluchenko recognized the heavier man, the last to run, as the defendant whom he had previously met. The area was illuminated by the light from the lamp-post and the lighting of his apartment, which was completely lit, reflecting light on the vacant lot next door; Pawluchenko testified of defendant, "I saw the man . . . I definitely saw the man." The car parked near the lamp-post and toward which the two men were running, Pawluchenko recognized as defendant's car inasmuch as he had driven it once before defendant owned it; thus he then said to defendant, "Isn't that your dad's car?", whereupon defendant looked and "sort of scratched his head and he said 'It can't be.'" Pawluchenko told him, "It is . . .," and then he (Pawluchenko) "immediately knew who it was." The two men, however, then ran past the vehicle down the alley where Pawluchenko lost them. He took down the license number of the car; later that night Pawluchenko went to defendant's home and saw the same car, bearing the same license

number, parked in front of defendant's house. At that time Pawluchenko asked defendant for the return of the stolen items but the latter denied he took them. At all times with Pawluchenko was a friend, Bob Robinson. Pawluchenko discovered missing from his house, besides the radio, several lighters, a transistor radio, money, and his clothing which he found "piled out in a pile of bushes off of the property," including the trousers he wore at the trial.

The same morning, after police apprehended one Jim and had arrested defendant, the latter told Officer Donnell and another police officer at the detective bureau that the night before he had been riding around with a young fellow named Jim and had gone to Nick's apartment to burglarize it; that on a prior occasion he had met Nick and knew he had a lot of nice clothing and "decided to get some of them"; that they went around to the back and Jim removed a board and crawled into the apartment; that he stood on the back porch and Jim handed him a "bunch of slacks through the rear door"; and that while standing there he noticed Pawluchenko's car drive up, he "hollered for Jim" and they both ran, he dropping the slacks.

Defendant testified at the trial; he denied he burglarized Pawluchenko's residence, admitted he had previously been in the latter's home and denied he ever confessed or told the officers "he had anything to do with it" outside of saying to them that he "agreed they (the circumstances) sounded very convincing."

Appellant's first contention that Pawluchenko's testimony identifying him as one of the burglars is inherently incredible, is predicated on the argument that had Pawluchenko actually recognized defendant he would have called him by name when pursuing the two men instead of shouting "thief!" "burglar!," and that Pawluchenko's identification of defendant was based solely upon his recognition of the car as one then driven by defendant. He urges that "these essential weaknesses in the confused and contradictory statements of the complaining witness" make his testimony incredible, inherently or physically impossible and unbelievable (A.O.B., p. 8). This argument has no validity factually or under the applicable rules.

It appears from the evidence that when Mr. Pawluchenko saw the two men running away from his house and shouted "thief! burglar!" he was not *then* aware of the identity of the last man, whom he immediately thereafter under the light

recognized as the defendant. In any event it is reasonable to infer from the evidence that even had Pawluchenko recognized defendant at the moment he saw the men run, he then under the circumstances either did not know or remember his name, although he had previously met him; moreover, it was then obvious to Mr. Pawluchenko that defendant had not visited him as a friend but as a "thief" or "burglar." Concerning his identification, appellant misquotes the evidence in his claim that Pawluchenko "indicated that he identified defendant on the night of the burglary only by the fact that he recognized the car as one then driven by defendant" (A.O.B., p. 8). On the contrary, when asked on cross-examination "Now, isn't it a fact that you didn't see this particular defendant on that evening, but you associated the fact that a car—," Pawluchenko answered, "I saw the man, sir. I definitely saw the man"; and: "I had a good look" (at the man he recognized as the defendant). By this and his unequivocal identification of the defendant, Pawluchenko unquestionably placed him at the scene of the burglary. The circumstances of Pawluchenko's recognition of defendant are conducive to a positive identification—Pawluchenko had previously met defendant, the illumination of the area was such that he "had a good look" at the defendant and "definitely saw" him, and Pawluchenko heard his voice while then conversing with defendant about the parked car, at which time he then "immediately knew who it was," which "verified" his recognition. The ownership of the car under the lamp-post, toward which the two men originally ran, is also a powerful circumstance pointing to defendant's identity—not only was its license number the same as that of the car later found parked in front of defendant's house, but Pawluchenko independently recognized the car as one belonging to defendant, he having previously driven it before defendant owned it. In addition is the corroborative effect of defendant's own admission—that it was he who participated in the Pawluchenko burglary with Jim and ran from the premises.

 Appellant presents a factual argument that, no doubt, would have been proper before the trial court which had the duty of determining the credibility of the witnesses, the weight to be given the evidence and any conflicts therein (*People* v. *Newland*, 15 Cal.2d 678 [104 P.2d 778]; *People* v. *Hopper*, 168 Cal.App.2d 406 [336 P.2d 28]; *People* v. *Burton*, 162 Cal.App.2d 790 [328 P.2d 492]), for it is the trier of fact and not this court which must be persuaded beyond a reason-

able doubt of the guilt of the defendant. (*People* v. *Rankin,* 160 Cal.App.2d 93 [325 P.2d 10].) It is not our function to resolve inconsistencies and contradictions, if any, in the testimony of the complaining witness (*People* v. *Bahara,* 159 Cal.App.2d 160 [323 P.2d 453]); the claimed weaknesses of identification testimony are a matter of argument to the trier of fact and cannot properly be directed to this court or effectively urged on appeal (*People* v. *Williams,* 53 Cal.2d 299 [347 P.2d 665]; *People* v. *Farrington,* 213 Cal. 459 [2 P.2d 814]), unless the evidence of identification is so weak as to constitute no evidence at all (*People* v. *Kittrelle,* 102 Cal.App.2d 149 [227 P.2d 38]) or can be strictured as inherently improbable or incredible as a matter of law (*People* v. *McNeal,* 123 Cal.App.2d 222 [266 P.2d 529]; *People* v. *Hornes,* 168 Cal.App.2d 314 [335 P.2d 756]). Testimony is not inherently improbable unless it appears that what was related or described could not have occurred. (*Trancoso* v. *Trancoso,* 96 Cal.App.2d 797 [216 P.2d 172]; *People* v. *Bahara,* 159 Cal. App.2d 160 [323 P.2d 453].) "To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. [Citations.]" (*People* v. *Huston,* 21 Cal.2d 690, 693 [134 P.2d 758]; *People* v. *Simpson,* 43 Cal.2d 553 [275 P.2d 31].) There has been no showing that Pawluchenko's testimony is inherently improbable; we deem the same to be reasonable and worthy of belief, as did the trial judge who heard and observed Pawluchenko testify. Defendant's denial did no more than create a conflict in the evidence that the trial court had the duty to resolve (*People* v. *Simpson,* 43 Cal.2d 553 [275 P.2d 31]; *People* v. *Ferrato,* 69 Cal.App.2d 176 [158 P.2d 573]; *People* v. *McNeal,* 123 Cal.App.2d 222 [266 P.2d 529]) and did so, against defendant. It was not required to give credence to defendant's testimony and it is not our function to reappraise its effect (*People* v. *Benford,* 53 Cal.2d 1 [345 P.2d 928]; *People* v. *Merkouris,* 52 Cal.2d 672 [344 P.2d 1]; *People* v. *DePaula,* 43 Cal.2d 643 [276 P.2d 600]; *People* v. *Carnine,* 41 Cal.2d 384 [260 P.2d 16]); appellant's challenge to the sufficiency of the identification evidence is without merit. (*People* v. *Williams,* 53 Cal.2d 299 [347 P.2d 665]; *People* v. *Hornes,* 168 Cal.App.2d 314 [335 P.2d 756]; *People* v. *Hightower,* 40 Cal.App.2d 102 [104 P.2d 378].)

In addition to the eyewitness testimony, defendant's

admission placed him at the time and place in question; but had there been none, Mr. Pawluchenko's unequivocal identification of defendant, believed by the trial court, is alone sufficient to support the judgment of conviction. (*People* v. *McNeal,* 123 Cal.App.2d 222 [266 P.2d 529] ; *People* v. *Thompson,* 147 Cal. App.2d 543 [305 P.2d 274] ; *People* v. *Rodriquez,* 169 Cal.App. 2d 771 [338 P.2d 41].)

Nor is appellant's argument that there is no proof of his entry of the premises sound. He says no one saw him running "out of" the house, only "away" from it; no one saw him with stolen goods in his possession; no one testified that the clothing found piled in the yard had previously been in the house and it was reasonable to infer that he removed nothing from Pawluchenko's house but that while passing they saw the items in the yard, the other man took the radio and they both ran. He complains that the only evidence of entry is circumstantial, which "presents several reasonable theories other than that of defendant's guilt" (A.O.B., p. 12). ▮ We are guided by the rule of *People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778], that before the judgment may be set aside, it must appear that upon no hypothesis whatever is there sufficient evidence to support the conclusion reached by the trial court. ▮ Assuming in favor of the judgment the existence of every fact deducible from the evidence, we can only conclude—either that defendant with his companion actually entered Pawluchenko's apartment, or that his participation as an accomplice of the other man made him criminally liable as a principal. Barring defendant's admission from our consideration for the moment, the only reasonable inference from Pawluchenko's testimony is that both men entered his premises and, interrupted by Pawluchenko's return, ran with what they held in their arms—the one with a radio, defendant with the clothing which he dropped to the ground to facilitate his departure. ▮ Direct evidence that defendant entered the premises is not required; entry may be proved by circumstantial evidence. (*People* v. *Tims,* 171 Cal.App.2d 671 [341 P.2d 56] ; *People* v. *Sparks,* 82 Cal.App. 2d 145 [185 P.2d 652] ; *People* v. *Savage,* 14 Cal.App.2d 142 [57 P.2d 973].) In the Sparks case, *supra,* none of the three victims saw anyone enter or leave their homes but the court therein said at page 154: ". . . the corpus delicti in Counts I, II and III was amply proven by the three householders who testified to the essentials of burglary . . ." ▮ However, assuming, in accord with defendant's own admission, that he

in fact did not enter the premises but stood guard on the porch and took the stolen articles pasesd out to him from inside, it is clear under California law that "the defendant, as an accessory, aided in the furtherance of the actual commission of the burglary and was therefore liable to prosecution as a principal. (Pen. Code, §§ 31 and 971.)" (*People* v. *Bonilla*, 124 Cal.App. 212, 214 [12 P.2d 64].)

In a general argument, that inasmuch as "illegal delay," the method of eliciting information from a defendant, failure to duly caution him and the absence of counsel at the time, are circumstances the trial court must consider in determining the admissibility of a confession, appellant urges that the lower court erred in admitting his statements to police; and that they were not voluntarily given because Officer Donnell told him "that he would get a lot less time by pleading 'Guilty' " (A.O.B., pp. 9, 11).

The record reveals that after testimony the statements were freely and voluntarily made, Officer Donnell related the substance of what defendant told the police—that he participated in the Pawluchenko burglary. At no time in the trial court was objection to the introduction of this evidence interposed. For his failure to make timely objection in the court below, appellant is precluded from raising the point of the voluntary nature of the confession on appeal (*People* v. *Hurst*, 36 Cal.App.2d 63 [96 P.2d 1003]), particularly in the absence of any circumstance making the use of the confession a denial of due process. (*People* v. *Millum*, 42 Cal.2d 524 [267 P.2d 1039].)

Not only was a factual conflict created in the evidence when defendant denied participation in the burglary, but it is clear that one exists within defendant's own testimony—on the one hand, by defendant's denial he made the statements attributed to him, and on the other, by his claim the statements were not voluntarily made and his somewhat vague and rambling explanation as to why he made them and why the officers might have interpreted them as a confession. He testified at some length and evasively, concerning his conversation with the officers and said that maybe the police thought he was admitting something when, after they asked about "these details" he "agreed they sounded very convincing"; he also said several times that the police told him it looked very bad for him, and on one occasion when he asked them because they were "professional" people what they thought he should do, they advised him that he "would get a lot less time by plead-

ing guilty." Officer Donnell testified to the question and answer method of taking defendant's statements and denied he ever told defendant that if he agreed to a certain factual statement he would "get off easier." ▆ Voluntariness is mainly a question of fact for the trial court and its determination on conflicting evidence will generally be upheld. (*People* v. *Crooker*, 47 Cal.2d 348 [303 P.2d 753] ; *People* v. *Chessman*, 38 Cal.2d 166 [238 P.2d 1001] ; *People* v. *Mehaffey*, 32 Cal.2d 535 [197 P.2d 12].)

▆ Appellant also complains he was without counsel when the statements were made. Defendant testified that when first questioned by police he told them he would "like to have some legal advice immediately"; and that he did send for his lawyer by signing a form therefor. He further testified that later, but before his counsel arrived, he made certain statements to the officers which they might have construed as a confession. Inasmuch as defendant at no time when he gave his statement to police asked the officers to wait until counsel could be present, or complained about counsel's absence when further interrogated, or even called the matter to their attention; and at no time on the stand, at the trial or any time prior to this appeal objected that the statement had been taken when counsel was not present, we are not impressed with his good faith in now, for the first time, asserting that he was denied counsel and complaining that the confession was involuntarily given because he was absent. With a certainty, his own testimony does not sustain any denial of counsel, for he asked for one, signed the form therefor and received one. ▆ Even had his request been denied, such denial would not in itself constitute a deprivation of due process in connection with the admissibility of the confession; it would merely constitute a circumstance for the trial court to consider in determining whether the confession was voluntary. (*People* v. *Crooker*, 47 Cal.2d 348 [303 P.2d 753].) In the case at bar, absence of counsel at most serves as a factor in the determination of the voluntariness of the confession. The lower court's determination that it was voluntary will not be disturbed.

▆ Abuse of discretion in denying his motion for new trial is urged as the last ground for reversal. Defendant sought a new trial on the basis of newly discovered evidence predicating his claim on an affidavit of his counsel that Bob Robinson was in jail in Mexico during the trial; and that Robinson stated to him that he was with Pawluchenko when they saw two men running from the house, that he had known

defendant for 15 years and did not recognize him as either of the men, that they both had their backs to them all of the time, and that Pawluchenko did not indicate he recognized either of them. Appellant argues that inasmuch as Pawluchenko's testimony was of a "highly questionable nature," the new evidence in the form of Robinson's testimony "would very likely have resulted in a different verdict of the court" upon retrial (A.O.B., p. 7).

The trial judge who heard Pawluchenko's clear testimony unequivocally identifying defendant as one of the burglars under conditions most favorable to positive identification, and the evidence of defendant's confession, neither agreed with appellant that Pawluchenko's testimony was "highly questionable," nor believed, assuming the content of his counsel's affidavit to be true, that upon retrial it would likely change the court's conviction; he undoubtedly weighed all of the evidence at the trial with the hearsay contained in the affidavit and determined that the effect of the latter was not sufficient to justify a retrial. The defendant clearly failed to convince the lower court which heard the evidence that the proposed testimony relied upon in the affidavit would likely cause it to reach a different conclusion concerning his guilt. (*People* v. *Greenwood*, 47 Cal.2d 819 [306 P.2d 427].)

It is also unquestionably clear that the proposed testimony of Robinson is not "new," and certainly is not the "newly discovered evidence" contemplated by section 1181, subdivision 8, Penal Code. Defendant was fully aware, not only during the trial, but at the time of his arrest, of the situation pertaining to Bob Robinson, for according to his own testimony under oath at the trial—at the time of his arrest he told police that he knew "the fellow that was with the victim—he had gone to Mexico under other circumstances" and he "thought possibly he (Robinson) would probably clear the thing up . . ." At the trial he also testified that he was acquainted with Bob Robinson who had gone to Mexico. Further, although defendant in propria persona was granted a continuance for the purpose of contacting Robinson, we have noted no further request for continuance for the purpose of securing his presence; on the contrary the record shows, that knowing about Robinson, defendant announced to the court he was ready for trial and did proceed. Obviously the facts were within the defendant's knowledge beginning with the very morning of the burglary when shortly after it occurred, Pawluchenko and Robinson appeared at defendant's home—they do not constitute *newly* discovered evidence. (*People* v. *Miller*, 37

Cal.2d 801 [236 P.2d 137]; *People* v. *English,* 68 Cal.App.2d 670 [157 P.2d 429].) As to diligence, even the affidavit on its face reveals a lack of reasonable diligence in producing the proposed testimony at the trial. (Pen. Code, § 1181, subd. 8.)

Moreover, the affidavit executed by counsel was clearly hearsay as to what Robinson told him, and at most sets forth only his conclusions as to the facts to which Robinson would testify. No statement from Robinson appears in the record, nor was he subpoenaed to appear, nor was he present in court at the time of the hearing. This alone supports the trial judge's exercise of discretion in denying the motion. (*People* v. *Merrill,* 104 Cal.App.2d 257 [231 P.2d 573]; *People* v. *Neal,* 27 Cal.App.2d 655 [81 P.2d 593]; *People* v. *Gompertz,* 103 Cal.App.2d 153 [229 P.2d 105].) In addition, the lower court may well have rejected the verity of the statements contained in the affidavit.

The entire record strongly suggests that defendant, with full knowledge of Robinson, took the chance of being acquitted; now that he stands convicted he wants a second opportunity to present evidence which with reasonable diligence could have and should have been presented by him at the trial. His attitude in this connection was expressed in his own words at the trial when defendant, referring to Robinson, related his conversation with the police, "Isn't there a possibility I could be found guilty and somebody coming up and clearing the matter?"

Appellant has failed to show the abuse of the lower court's discretion necessary to justify this court in disturbing the former's ruling. (*People* v. *Miller,* 37 Cal.2d 801 [236 P.2d 137]; *People* v. *Beard,* 46 Cal.2d 278 [294 P.2d 29].)

For the foregoing reasons the judgment and the order are affirmed.

Wood, P. J., and Fourt, J., concurred.