[Crim. No. 12815.  Second Dist., Div. One.  June 16, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. PAUL JAMES HRISOULAS, Defendant and Appellant.

James E. Green for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and David Gould, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—Defendant was charged with four counts of violation of section 288, Penal Code, and two counts of violation of section 288a, Penal Code. The cause was heard by the court sitting without a jury. Defendant was found guilty of committing a lewd and lascivious act upon the body of Stephanie Kresho (§ 288, Pen. Code [count I]) and an act of oral copulation with her (§ 288a, Pen. Code [count II]) ; he was acquitted on the other four counts. Found by the court not to be a mentally disordered sex offender, motion for new trial was denied, proceedings were suspended and defendant

was granted five years probation. He appeals from judgment.

We assume in favor of the judgment the existence of every fact reasonably deducible from the evidence. Mrs. Kresho left her two daughters, Stephanie, age 10, and Coral Ann, age 13, son, Steve, age 6, and another child, Regina, at defendant's home around 3:50 p.m., July 30, 1965, to play with his son, James, age 9, and another little boy, in a rubber swimming pool in defendant's back yard. After about half an hour Stephanie got out of the pool and asked defendant for a towel; he told her to go into the house and get it. They entered the house and defendant locked the screen door. Defendant got her a clean towel and then asked her to take off her bathing suit; she refused. They returned to the back yard where Stephanie went into the pool for another half hour. When she got out defendant told her to come into the house; she went into the kitchen and defendant locked the door and took her into the living room. He told her to take off her bathing suit but again she refused; defendant then ripped the top off her left shoulder and took the bathing suit. He removed a pair of mailman's trousers; his undershorts were blue with a flower print. On the couch he committed the acts charged in Counts I and II, described in detail by Stephanie, after which she hit defendant who said some "dirty filthy words." As she got up, defendant picked her up and threw her onto the couch, then tied her hands behind her and went into another room and got a pocket knife; he said if she told anyone "he would cut [her] throat to pieces." Defendant kissed Stephanie on the lips, told her to put on her clothes and untied her hands. She put on her bathing suit. Regina knocked on the door and defendant again told Stephanie that if she told anyone what had happened he would "cut [her] throat to pieces," and to tell Regina that she didn't feel well and he was giving her some aspirin. Stephanie told her this, then, while defendant was in another room, told her what he had done. Defendant returned and told Stephanie to go back into the swimming pool; it was approximately 5:45 p.m. Coral Ann called their mother at this time; Mrs. Kresho told her that she wanted them home at 6 o'clock. When they returned home Stephanie told her mother what had happened; Mrs. Kresho took her to the police station where she spoke with the officers. Later, around 11 p.m. Mrs. Kresho took Stephanie to Dr. Moore who examined her in the emergency room of Holy Cross Hospital. He described what he found and testified that the injuries to her privates had occurred within the past 12

hours and were consistent with the history of being sexually molested.

When defendant was arrested he told the officer that the one girl, about 10 years old, said she did not feel good so he let her come into the house and lie down on the couch.

In his defense, defendant testified that on July 30 Stephanie and Coral Ann came over to play with his son James; he picked up Stephanie and took her out of the pool and put a towel around her, and when she was ready to go home he again helped her out of the pool; aside from this, he never touched Stephanie nor did he ever sexually molest her; he has never been convicted of a felony.

Appellant's sole contention is the insufficiency of the evidence to support the judgment. Ignoring the rule that it is for the trier of fact and not this court to be persuaded beyond a reasonable doubt of the defendant's guilt, he presents an extensive factual argument based entirely upon certain alleged inconsistencies, contradictions and discrepancies in Stephanie's testimony, comparisons between her testimony and that of Coral Ann, and the testimony of Dr. Moore which he claims is inconsistent with the acts he is charged with committing. He says that Stephanie's testimony is manifestly false and inherently improbable in that she could not have been treated in the manner she described without the other children knowing about it; that had any such thing occurred, they would have tried to assist her or summon aid; she could not have been tied and thrown about because no bruises, marks or abrasions were found on her wrists or body; she could not have bit his arm and private parts for no such marks were found; Coral Ann's testimony failed to support Stephanie's story; Stephanie denied making certain prior statements to which the officer testified; it was physically impossible for him to have committed the acts in the manner Stephanie described; when Stephanie was faced with inconsistent prior statements she enlarged on her story; her account is the product of fantasy and imagination and the result of her previous extensive discussion of sex with the other children; Regina was not called as a witness by the People and "all 12" witnesses contradicted Stephanie's testimony.

The cross-examination of Stephanie developed some inconsistencies but her testimony is by no means so "utterly fantastic," "manifestly false," or "inherently improbable" as to render it unworthy of belief; nor are they such as to warrant reversal of the judgment. (*People* v. *Barbera*, 50 Cal.2d

688, 692 [328 P.2d 973].) Defendant pointed out these same alleged inconsistencies, contradictions and discrepancies, and made the same argument, to the trial judge. The case at bar is not similar to those cited by appellant in which the judgment was rendered under ''the influence of passion or prejudice.'' The record shows that in making his determination the trial judge gave careful consideration to the evidence and to defendant's argument, was aware of the rule that requires the trier to examine the testimony of the child in such cases with caution, and exercised his duty to determine the credibility of witnesses, weigh the evidence and resolve factual conflicts with great care. He, in fact, acquitted defendant on four counts because he was not satisfied that Coral Ann's testimony was worthy of belief in that regard. In finding defendant guilty on Counts I and II, the trial judge said: ''The Court is conscious of the rule of law which cautions the trier of fact to constantly bear in mind that in cases of this kind that the testimony of young children with respect to the charges is to be received with extreme caution and is to be carefully considered.

''The Court is conscious of the fact that the witness Stephanie Kresho in many respects over-dramatized the situation. It having viewed the testimony over the weekend and having considered the thoughtful arguments which have been presented to the Court by counsel for the defendant as well as the People, the Court is of the opinion that the discrepancies in the testimony of Stephanie Kresho do not at all detract substantially from the credibility of her testimony as to what transpired on the occasion of July 30th, and the defendant is found guilty—

''. . . . . . . . . . .

''THE COURT: Defendant is found not guilty as charged in Counts III, IV and V.[1]

''I regret for the sake of the defendant that I have to make this finding, but this is my responsibility and I have to weigh the testimony, and it is not an easy decision which the Court has reached. I am satisfied that Coral was the least credible of the two witnesses and for that reason I have given the defendant the benefit of the doubt as to these three charges.''

Appellant's factual argument, while proper in the court below, cannot effectively be urged on appeal. (*People* v. *Johnson*, 187 Cal.App.2d 116, 121 [9 Cal.Rptr. 571].) He asks

[1]The record shows defendant was acquitted on four counts (III, IV, V and VI) all involving Coral Ann.

us to determine, contrary to the trial judge's finding, that Stephanie's testimony in toto cannot be believed. It is the exclusive province of the trial judge to determine the credibility of witnesses, weigh the evidence and resolve factual conflicts. (*People* v. *De Paula,* 43 Cal.2d 643, 649 [276 P.2d 600]; *People* v. *Jones,* 36 Cal.2d 373, 375 [224 P.2d 353].) At this stage the test is not whether evidence may be reconciled with innocence but whether there is substantial evidence in the record to warrant the inference of guilt drawn by the trier below. (*People* v. *Hillery,* 62 Cal.2d 692, 702-703 [44 Cal.Rptr. 30, 401 P.2d 382]; *People* v. *Saterfield,* 65 Cal.2d 752, 759 [56 Cal.Rptr. 338, 423 P.2d 266].) ▮ Viewing the evidence and all reasonable inferences to be deduced therefrom in a light most favorable to the prosecution (*People* v. *Sweeney,* 55 Cal.2d 27, 33 [9 Cal.Rptr. 793, 357 P.2d 1049]), we are satisfied that the judgment is amply supported by the evidence. The testimony of Stephanie, along with the expert medical testimony of Dr. Moore, the examining physician, constituted sufficient facts from which the trier could infer defendant's guilt.

▮ A reviewing court cannot reject the testimony of a witness that has been believed by the trier of fact unless there exists either a physical impossibility that it is true or its falsity is apparent without resorting to inferences or deductions. (*People* v. *Huston,* 21 Cal.2d 690, 693 [134 P.2d 758].) ▮▮ It is the function of the trial court, not this court, to resolve inconsistencies and contradictions, if any, in the testimony of the complaining witness; it may believe and accept as true part of the testimony of a witness and disbelieve the remainder. On appeal that part which supports the judgment must be accepted, not that part which would defeat or tend to defeat it. (*People* v. *Bahara,* 159 Cal.App.2d 160, 161-162 [323 P.2d 453].) Testimony is not inherently improbable unless it appears that that which was related or described could not have occurred. (*Trancoso* v. *Trancoso,* 96 Cal.App. 2d 797, 798 [216 P.2d 172].) ▮ We find no physical impossibility in the account given by the complaining witness and there is no apparent falsity in her story of what actually occurred.

Stephanie's appearance, demeanor and manner of testifying sufficiently impressed the trial judge that in the face of her testimony he could not believe defendant's denial. His testimony did no more than create a conflict in the evidence that the trial judge had the duty to and did resolve; he was

not required to give credence to defendant's story and it is not our function to reappraise its effect.

It is true that the 10-year old's testimony was not free of contradictions and inconsistencies, but they related to matters not of substantial importance; nor can it be denied that her older sister's testimony did not well corroborate her and that the trial judge rejected that relating to the four counts involving Coral Ann; but it is the trier of fact, not this court, who must be convinced of defendant's guilt beyond a reasonable doubt. ▮▮▮ If the circumstances reasonably justify his findings, any opinion of this court that the circumstances might also be reconciled with a contrary finding does not warrant a reversal. (*People* v. *Robillard,* 55 Cal.2d 88, 93 [10 Cal.Rptr. 167, 358 P.2d 295, 83 A.L.R.2d 1086]; *People* v. *Love,* 53 Cal.2d 843, 850 [3 Cal.Rptr. 665, 350 P.2d 705]; *People* v. *Daugherty,* 40 Cal.2d 876, 884 [256 P.2d 911]; *People* v. *Hillery,* 62 Cal.2d 692, 702 [44 Cal.Rptr. 30, 401 P.2d 382].)

▮▮▮ In arguing that the People's failure to call Regina as a prosecution witness raised the presumption that had she been called her testimony would have been adverse, appellant cites section 1963, subdivision 5, Code of Civil Procedure. While this section states the presumption "[t]hat evidence wilfully suppressed would be adverse if produced," there is no showing in the record that would justify equating the failure of the prosecution to produce Regina with the wilful suppression of her testimony.

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.