[No. B167064. Second Dist., Div. Eight. July 16, 2004.]

In re DANIEL G., a Person Coming Under the Juvenile Court Law.
THE PEOPLE OF THE STATE OF CALIFORNIA, Plaintiff and
Respondent, v.
DANIEL G., Defendant and Appellant.

## COUNSEL

Sandra L. Waite, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Steven D. Matthews and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**RUBIN, J.**—Minor Daniel G. appeals from the orders of the juvenile court determining that he was a ward of that court after finding that he had possessed an assault weapon (Pen. Code, § 12280, subd. (b)) and had loitered with the intent to publicize a street gang. (L.A. County Code, § 13.44.010.) For the reasons set forth below, we affirm the order as to the assault weapon charge but reverse as to the gang loitering charge.

## FACTS AND PROCEDURAL HISTORY[1]

1. *Assault Weapon Petition*

At around 10 p.m. on September 23, 2002, minor Daniel G. (Minor) and several other youths were spotted passing around an AR-15 assault rifle. Minor was arrested and a petition was filed with the juvenile court alleging that Minor should be determined a ward of the court. (Welf. & Inst. Code, § 602.) The primary witness against Minor was Katrece McCraw, who lived in an upstairs unit of an apartment building on 111th Street in Inglewood. McCraw knew Minor because Minor was an acquaintance of McCraw's son and daughter.

When McCraw stepped out from her front door on the night of the incident, she looked downstairs and saw Minor and three or four others handling the rifle. She went back into her apartment and took a bath. Someone else who saw the incident phoned Los Angeles County sheriff's deputies. Several deputies came to the building, entered McCraw's unit, and found the rifle, which had been wrapped in a towel and placed in the closet of a room used by one of McCraw's children. At trial, McCraw made it clear that she was a reluctant witness and offered a version of events which tended to minimize Minor's conduct. In short, she testified that she took only a very quick look outside and saw Minor merely touching the gun, at one point holding it with the barrel facing down.

The most damaging evidence against Minor came from written witness statements McCraw signed that night and from comments she made to one of

---

[1] In accord with the usual rules on appeal, we state the facts in the manner most favorable to the judgment. (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193 [60 Cal.Rptr.2d 315].)

the deputies, Joshua Lash. In one statement, McCraw said she saw Minor pass the rifle to each of the other participants. In the other, she claimed to have seen one of the participants pass the rifle back to Minor. She also told Deputy Lash that Minor and some of his friends had been in the carport area of her apartment building for several hours and that she saw Minor pointing the rifle while there.[2] On February 24, 2003, the court sustained the petition, but put off a disposition until it could decide the allegations of the gang loitering petition.

### 2. *Gang Loitering Petition*

Mad Ass Gangster Crips (MAGC) was a criminal street gang that engaged in drug sales and had gained a reputation for terrorizing and intimidating residents who lived near 111th and Osage Streets. Around 6:00 p.m. on January 16, 2003, Deputy Sheriff Mike Row drove by 111th and Osage Streets when he saw Minor standing on the sidewalk. Row stopped his patrol car and told Minor he had to leave and had to stop "hanging" with MAGC members and intimidating nearby residents. If Minor did not leave, Row said he would be arrested. Row drove off, but returned 20 minutes later. When Row saw that Minor had not left, Row arrested him for violating a Los Angeles County (the County) ordinance which prohibits loitering for the purpose of publicizing a gang's dominance of an area in order to intimidate others. (L.A. County Code, § 13.44.010.) A petition was filed alleging that Minor should be declared a ward of the juvenile court.

At trial, Row testified that on four or five occasions before the loitering arrest, he saw Minor "hanging out" with MAGC members known to engage in intimidating conduct. On two of those occasions, Minor admitted to being a member of the gang. On cross-examination, Row was asked whether he ever saw Minor engage in gang conduct. Row asked what defense counsel meant by "gang conduct." Defense counsel then asked whether Row ever had occasion to arrest Minor for any crimes when the deputy had seen Minor in the gang's territory. Row said he had never arrested Minor or given him a citation for a criminal offense. On the night Row arrested Minor for loitering, Row was on routine patrol and had not received any calls reporting trouble at that location. He did not see Minor selling drugs. Minor was standing and talking with another gang member named Kelly. Row was also asked on cross-examination whether he witnessed Minor intimidating anyone by doing something specific. The deputy replied that "[b]y my past experience, [Minor] standing out there with Mr. Kelly is intimidation." On direct examination,

---

[2] McCraw claimed that her statements were given under duress, after more than 20 deputies entered her unit at gunpoint and threatened to take her children away. Deputy Lash denied this and testified that McCraw freely consented to a search of her apartment and to giving her statements.

Row was asked to opine whether Minor had been loitering with the intent to publicize MAGC's dominance of the area. Row said he believed Minor had done so, and based his opinion on statements by MAGC members that "there would be trouble" if another gang came into the area as well as on complaints by neighbors who said they were afraid to leave their homes because of MAGC. Asked what was different that night which caused him to arrest Minor, Row testified that "this area had gotten so out of control that residents were unable to leave their house. They were absolutely scared to death to leave. And it's time for us to start taking some action. And we told them, 'you can either leave or we will come back and arrest you 20 minutes later for gang loitering.' And that's what happened."

Minor testified that he was not a gang member, he did not know that Kelly was a gang member, he lived nearby, and he had just finished playing football with some friends and was resting when Row drove by. The court sustained the gang loitering petition and placed Minor on home probation with various conditions.

## DISCUSSION

1. *Assault Weapon Charge*

   A. *Evidence of Possession*

   ■ Minor was charged with possession of an assault weapon. (Pen. Code, § 12280, subd. (b).) He contends there was insufficient evidence that he had been in possession of the rifle. When reviewing a claim of insufficient evidence, we examine the entire record in the light most favorable to the prosecution to determine whether it contains reasonable, credible and solid evidence from which the jury could find the defendant guilty beyond a reasonable doubt. If the circumstances reasonably justify the verdict, we will not reverse simply because the evidence might reasonably support a contrary finding. This standard applies to cases based on circumstantial evidence. (*People v. Valdez* (2004) 32 Cal.4th 73, 104 [8 Cal.Rptr.3d 271, 82 P.3d 296].) The testimony of just one witness is enough to sustain a conviction, so long as that testimony is not inherently incredible. (*People v. Provencio* (1989) 210 Cal.App.3d 290, 306 [258 Cal.Rptr. 330].) ■ The trier of fact determines the credibility of witnesses, weighs the evidence, and resolves factual conflicts. We cannot reject the testimony of a witness that the trier of fact chooses to believe unless the testimony is physically impossible or its falsity is apparent without resorting to inferences or deductions. As part of its task, the trier of fact may believe and accept as true only part of a witness's testimony and disregard the rest. On appeal, we must accept that part of the testimony which supports the judgment. (*People v. Hrisoulas* (1967) 251 Cal.App.2d 791, 796 [60 Cal.Rptr. 80].)

Possession may be actual or constructive. Actual possession means the object is in the defendant's immediate possession or control. A defendant has actual possession when he himself has the weapon. Constructive possession means the object is not in the defendant's physical possession, but the defendant knowingly exercises control or the right to control the object. (*People v. Pena* (1999) 74 Cal.App.4th 1078, 1083–1084 [88 Cal.Rptr.2d 656].) Possession of a weapon may be proven circumstantially, and possession for even a limited time and purpose may be sufficient. (*People v. Neese* (1969) 272 Cal.App.2d 235, 245 [77 Cal.Rptr. 314].)

Minor points to the absence of evidence that he owned the rifle, that he brought it to the location, that he placed it in McCraw's apartment, or that he had access to or dominion over her apartment. According to Minor, the evidence shows only that he was one of four persons who were briefly seen handling the rifle. This, he contends, is insufficient to establish either actual or constructive possession. We disagree.

McCraw told Deputy Lash that Minor and the others were in the carport for several hours and that, while there, she saw Minor pointing the rifle. She also testified that she saw Minor with the rifle when she looked out her front door and down the steps leading up to her unit and said in the written statement that she saw Minor passing the gun to the others at that time. We find it highly unlikely that the carport was right at the bottom of the steps leading to an upstairs apartment, suggesting that Minor was involved with the rifle at two different locations in and around the building for an extended period of time. Even if McCraw's observations all occurred at the same place and time, however, the evidence shows that Minor actually possessed the rifle. McCraw's statements that Minor passed the rifle to each of the others imply that the others returned it to Minor when their turns were through. She also directly witnessed one of the others pass the weapon to Minor. The fact that the weapon was passed back to Minor, who then passed it in turn to the others, creates a reasonable inference that the weapon was under his control and was therefore in his actual possession. The fact that the weapon was later found in McCraw's apartment, without apparent explanation for its presence there, does not alter the fact that Minor had previously possessed the rifle.

## B. *Evidence of Knowledge of Weapon's Characteristics*

In addition to requiring proof that Minor possessed the weapon, the statute also requires proof that he either knew or should have known that the rifle was in fact a prohibited assault weapon. (*In re Jorge M.* (2000) 23 Cal.4th 866, 869–870 [98 Cal.Rptr.2d 466, 4 P.3d 297] (*Jorge M.*).) In that case, the Supreme Court held that Penal Code section 12280, subdivision (b)

was not a strict liability offense and required proof that the defendant either knew or reasonably should have known that the weapon in his possession was an assault weapon. The court held that someone who had "substantial and unhindered possession" of an assault weapon would be expected to know whether or not it was a model prohibited by the statute. "At the same time, any duty of reasonable inquiry must be measured by the circumstances of possession; one who was in possession for only a short time, or whose possession was merely constructive, and only secondary to that of other joint possessors, may have a viable argument for reasonable doubt as to whether he or she either knew or reasonably should have known the firearm's characteristics." (*Id.* at p. 888.) Minor seizes on this language to contend his "fleeting possession" as one of four persons handling the weapon is insufficient evidence to show that he knew or should have known the rifle was an assault weapon.[3]

■ The *Jorge M.* court went on to state that it would be the rare case where someone who knowingly possessed an assault weapon could show his or her justified ignorance of its characteristics. Because all persons are obligated to learn of and comply with the law, it is ordinarily reasonable to conclude that, absent "exceptional cases in which the salient characteristics of the firearm are extraordinarily obscure, or the defendant's possession of the gun was so fleeting or attenuated as not to afford an opportunity for examination," one who knowingly possesses a semiautomatic firearm reasonably would investigate and determine whether the weapon's characteristics made it an assault weapon. (*Jorge M., supra,* 23 Cal.4th at p. 885.) Minor does not contend that the rifle's assault weapon characteristics were obscure. The rifle was also introduced into evidence, allowing the trial court to examine it and determine that issue for itself. Even witness McCraw was readily able to identify the weapon, telling the court it was an AR-15. As discussed above, Minor had control and therefore actual possession of the weapon and was seen at least once pointing it. On this record, we hold that there was sufficient evidence to support a finding that Minor at least should have known the weapon was a prohibited assault rifle.

## 2. *Gang Loitering*

Los Angeles County Code section 13.44.010 provides in relevant part that it is a misdemeanor "for any person who is a member of a 'criminal street gang' as that term is defined in California Penal Code section 186.22(f) or who is in the company of or acting in concert with a member of a criminal street gang to loiter or idle in a 'public place' as defined in Section 13.44.010

---

[3] Deputy Lash testified that the weapon was a fully operational AR-15 assault rifle. Minor does not dispute that or otherwise contend that the weapon found in McCraw's apartment was not covered by Penal Code section 12280.

B under any of the following circumstances: [¶] 1. With the intent to publicize a criminal street gang's dominance over certain territory in order to intimidate nonmembers of the gang from entering, remaining in, or using the public place or adjacent area . . . ." Minor contends that there is insufficient evidence that he loitered with the intent to publicize the gang's presence or to intimidate others. We agree.[4]

There are no reported decisions construing the County's ordinance. The parties have not cited, and we are unable to find, reported decisions considering whether there was sufficient evidence to find a violation of any other gang loitering ordinances. Decisions construing other types of loitering ordinances are instructive, however. The court in *People v. Frazier* (1970) 11 Cal.App.3d 174 [90 Cal.Rptr. 58] (*Frazier*) considered the convictions of three defendants for violating Penal Code section 653g, which prohibits loitering in or about the area of a public school. In order to pass constitutional muster, the school loitering statute had been construed to include a specific intent requirement— proof that the defendant loitered with the intent to commit a crime should the opportunity arise. (11 Cal.App.3d at pp. 182–183.) Proof of the defendant's intent did not require any specific kind of evidence and could be inferred from the circumstances. (*Id.* at p. 183.)

The evidence in *Frazier* showed that three hot dog stands within a block of a public high school had become a magnet for large numbers of juveniles and adults, who would congregate there to gamble, fight, drink, disturb the peace, or take drugs. This prompted numerous complaints from school officials and nearby residents. Two of the defendants were unemployed and had a history of being in or around the school grounds without reason. One had been spotted at a hot dog stand under the influence of alcohol. On other occasions he had been illegally parked and was present when gambling was going on. The other had also been present while gambling occurred. Both had been warned to leave the area before, and had done so. Right before the arrests, one of the defendants was 10 feet from and possibly taking part in gambling activity, playing his car radio loudly enough to disturb the peace. After being arrested, he twice tried to escape. On appeal from his conviction, the appellate court held the evidence was sufficient to show the defendant loitered with the intent to commit several crimes, including gambling, disturbing the

---

[4] Because we affirm on this basis, we need not reach Minor's other contentions: that there was insufficient evidence MAGC qualified as a street gang and that the County's gang loitering ordinance was unconstitutionally vague. For purposes of our discussion, we assume, but do not decide, that MAGC was a criminal street gang and that the ordinance was constitutional. We also assume, but do not decide, that Minor was loitering. Respondent contends that we lack jurisdiction to hear this appeal because the underlying offense was a misdemeanor and was therefore subject to the jurisdiction of the appellate department of the superior court. Because this matter arises from an order of the juvenile court, it is directly appealable to this court. (Welf. & Inst. Code, § 245.)

peace, and resisting arrest. (*Frazier, supra,* 11 Cal.App.3d at pp. 183–184.) When the second defendant was arrested, he was also seen close to or taking part in gambling and also twice escaped from the arresting officers, evidence which supported his conviction as well. (*Id.* at p. 184.) Although the third defendant had a history of being in the area and close to the conduct of illegal activity, when he was arrested he was not near to or engaging in any illegal activity. Instead, he was standing with a group of minors "doing nothing." The appellate court reversed that defendant's conviction, holding the evidence was insufficient to support a finding of the required intent. (*Id.* at pp. 182, 184.)

The court in *People v. Superior Court (Caswell)* (1988) 46 Cal.3d 381 [250 Cal.Rptr. 515, 758 P.2d 1046] (*Caswell*), considered the constitutionality of Penal Code section 647, subdivision (d), which prohibits loitering in or around public toilets with the intent to commit a lewd or lascivious act. In arguing that the statute was unconstitutionally vague, the defendant contended it impermissibly allowed police officers to make arrests based on their observations of noncriminal conduct. The Supreme Court rejected that contention, holding that apparently lawful conduct could well give rise to probable cause to believe an individual had violated the statute. "For example, an officer may personally know an individual and may be aware *that the individual* has repeatedly solicited or committed lewd acts at the same location in the past. Under such circumstances, if the officer observes *the individual* linger suspiciously in the restroom for an inordinately long period of time, he might properly infer that the suspect did not have an innocent intent. In other cases, a police officer may have information from a reliable informant *that a particular individual* has disclosed *his* intent to frequent a particular public restroom to attempt to solicit acts in the restroom; in that situation too, the officer may well have probable cause to infer *the suspect's intent* even if *the suspect* has not yet committed indecent exposure or an actual solicitation. Similarly, complaints by citizens who have used a certain restroom *that an individual* was lingering inside engaging in suggestive conduct—not amounting to actual solicitation or indecent exposure—may legitimately give rise to a reasonable inference that *the individual* harbors the illicit intent." (*Caswell, supra,* at pp. 395–396, italics added and fn. omitted.)

The common thread running through both *Frazier* and *Caswell* is the confluence of the past and present conduct of a specific individual. In *Frazier,* all three defendants had been spotted near the high school on past occasions either engaged in or in very close proximity to ongoing criminal activity. In determining whether there was sufficient evidence that the three defendants intended to look for the opportunity to commit a crime, the convictions were sustained as to only the two defendants who were observed nearby or in the process of committing criminal acts at the time of their arrests. (*Frazier, supra,* 11 Cal.App.3d at pp. 183–184.) The defendant who was "doing

nothing" at the time of his arrest—who was seen simply standing with a group of juveniles—had his conviction reversed. In *Caswell,* the Supreme Court held that evidence of an individual's prior conduct, when coupled with evidence of other suspicious but noncriminal conduct occurring right before the arrest, might be enough to show the required intent to commit a lewd act. (*Caswell, supra,* 46 Cal.3d at pp. 395–396, and fn. 5.)

■ Such evidence is missing here. Gangs will often maintain their dominance through fear and intimidation by the use of gang signs and symbols. (*People v. Englebrecht* (2001) 88 Cal.App.4th 1236, 1266 [106 Cal.Rptr.2d 738] [considering validity of civil antigang injunction].) They may also do so by way of seemingly benign jewelry, words, or clothing. (*Stephenson v. Davenport Community School Dist.* (8th Cir. 1997) 110 F.3d 1303, 1311 [construing constitutionality of Iowa school district regulation banning gang-related clothing and symbols].) Other evidence might include observations of intimidating conduct such as menacing looks or threatening body language.[5] When Deputy Row's testimony is distilled, however, it amounts to no more than this: because Minor belonged to MAGC, and because MAGC members often intimidated others and publicized their dominance of the area, Minor's mere presence at the location was enough to show that Minor shared that intent on that occasion. Although there was evidence that MAGC members in general had engaged in prohibited conduct, there was no evidence that Minor had ever done so in the past. Nor was there evidence to suggest that despite the absence of past participation, Minor was on this occasion either taking part in or was close by while other gang members did or said anything that could lead to an inference that they had the intent to intimidate or publicize. Row testified that he had not received any reports of trouble in the area and that Minor was doing nothing more than standing on the sidewalk talking to a fellow gang member. He did not testify that Minor or Kelly was dressed in gang attire, throwing signs, or otherwise demonstrating their gang affiliation. In short, there was no evidence that either one had done anything more which could lead to an inference that they were intimidating others or publicizing their gang at that time. We therefore hold that the evidence was insufficient to sustain the petition.

## DISPOSITION

For the reasons set forth above, the order adjudging Minor to be a ward of the court based on his possession of an assault weapon (Pen. Code, § 12280, subd. (b)), is affirmed. The order adjudging Minor to be a ward of the court for committing gang loitering (L.A. County Code, § 13.44.010) is reversed.

---

[5] The conduct listed here is not meant to be all-inclusive and is offered as no more than possible examples of conduct that might create an inference of an attempt to intimidate others or publicize a gang's dominance of an area.

Because the court made a combined disposition order based on the weapons possession and loitering petitions, the matter is remanded to the juvenile court with directions to hold a new disposition hearing, which shall be based solely on the assault weapons possession petition.

Cooper, P. J., and Flier, J., concurred.