Filed 9/3/14  In re Aiden G. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re AIDEN G., et al., Persons Coming Under the Juvenile Court Law. | B252509<br>(Los Angeles County<br>Super. Ct. No. DK00452) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>       Plaintiff and Respondent,<br><br>v.<br><br>C.A.,<br><br>       Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Pamela Rae Tripp, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Maureen L. Keaney, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel and John C. Savittieri, Deputy County Counsel for Plaintiff and Respondent.

In this dependency appeal, C.A. ("mother") appeals from the findings and orders of the juvenile court sustaining a Welfare & Institutions Code[1] section 300 petition and removing her children from her custody.

*Factual and Procedural Background*

Aiden G. (born October 2008) and his half-brother A.A. (born September 2011) both lived with mother. On August 10, 2013, mother took Aiden to the hospital due to pain in his leg. Neither mother or Aiden had an explanation as to the cause of the pain. Aiden merely said when he awoke from a nap at nursery school, his leg hurt. According to Nurse Fields, the reporting party, mother interrupted Aiden while he attempted to describe his day at school on the day when he suffered the leg pain, and the child appeared afraid.

Aiden's leg appeared slightly swollen, but there were no visible bruises on it. Mother stated that she had given Aiden Tylenol with codeine the previous night, but she was unaware of the dosage. The doctor ordered an x-ray of the leg. While they were waiting for the results of the x-ray, mother and the children stayed in the examination room.

While they were waiting, mother was observed throwing A.A. onto a bed and holding a blanket over his face for about 20 seconds. Mother also grabbed A.A. by his shirt and violently threw him across the floor. A.A. did not incur any visible injuries as a result of mother's actions. The police were called and mother was arrested. Aiden's x-ray was negative and he was discharged from the hospital.

A social worker from the Department of Children and Family Services ("DCFS") proceeded to the police station where she interviewed Officer Contreras, who had responded to Beverly Hospital in regard to the incident, and had interviewed two witnesses and mother. One of the witnesses, Nurse Fields, told Officer Contreras that hospital staff observed mother to be very short with other patients in the emergency room

---

[1] All further statutory references in this opinion are to the Welfare & Institutions Code, unless otherwise indicated.

in general and A.A. in particular, screaming at him and telling him to shut up. Mother appeared frustrated. She picked up A.A. and threw him on the bed and held a blanket over his face. A.A. cried and mother did not comfort him. Mother yelled at A.A. and yanked his arm. She said "Shut up and go to sleep." She then grabbed him by his shirt and threw him violently across the room

The second witness, a Ms. D., had accompanied her ailing granddaughter to the hospital, who was in the examination room in a bed next to mother. She stated that mother was very abusive to A.A. She saw mother yelling at A.A. and yanking his arm multiple times. Mother also grabbed A.A. by his shirt and violently threw him across the floor. Ms. D. reported her observations to hospital staff.

Officer Contreras told the social worker that mother seemed very angry and he suspected she was suffering from mental problems.

The social worker also interviewed mother at the police station. She reported that mother did not know why she was arrested. Mother denied abusing her children, though she admitted she was overwhelmed and somewhat impatient while she was waiting for the results of the x-rays. She admitted that she put A.A. on the bed in a "rough manner" and threw a blanket over his head, but denied that she was trying to hurt him. She denied throwing A.A. across the floor, saying he did that himself.

Mother told the social worker that she was an unemployed single mother and was overwhelmed by her financial situation. She was depressed and had un-resolved issues from childhood, when she had been abused. She was trying to be a good parent, but felt overwhelmed.

The social worker reported that mother indeed seemed overwhelmed and was "talking and talking," but was unable to focus on explaining what happened at the hospital and why the police were called. Mother, while crying during the interview, stated: "I know I am angry, and I am angry with my children, but I do not know why." She acknowledged that she would benefit from mental health services but denied having mental health issues. She admitted she had a problem with managing her anger and verbally took her frustration out on the children.

The social worker also interviewed the children's maternal aunt at the police station. She said that mother was a good mother, but she had a short temper and was difficult to deal with. Mother made big issues out of small ones. She stated that mother was once diagnosed as being a manic-depressive.

The Department of Mental Health of the County of Los Angeles reported to the social worker that mother had an open case in 1989, at which time she was diagnosed with an "Adjustment Disorder with Mixed Disturbances in Emotion and Conduct."

At the conclusion of the investigation, the social worker assessed that the children were victims of physical abuse, at high risk for future abuse, and could not safely remain in mother's care.

On September 12, 2013, another DCFS social worker interviewed mother. Mother stated that on the day she took the children to the hospital, they were required to wait in the hall until Aiden was given a room several hours later. The room contained several patients separated by curtains. A.A. was fidgety and restless; he walked around and pushed the curtains aside, exposing other patients. Aiden fell asleep while waiting to be examined.

Mother informed the social worker that while they were waiting in the hospital she attempted to put A.A. down for a nap and in this regard forcibly placed him on a gurney. She claimed that A.A. hit his head on several objects on the gurney when he tried to get away from her. She then tossed a jacket over his head for 20 to 30 seconds while she rubbed his back and said "nite nite" to soothe him. Mother said that A.A. then became quiet, but when she lifted the jacket hood, he was still awake. She said that prior to this, A.A. was not listening to her.

When she grabbed A.A. by the shirt, he threw himself to the floor in a diving motion and had a tantrum in front of the other patients. She claimed that no one could have seen what happened because of their positions in the room.

Mother reported that she had problems with fibromyalgia, vertigo, and migraine headaches, but currently did not take medication for any of these problems. At the time of the incident at the hospital, however, she was taking Amitriptyline for migraines and

4

vertigo. She had stopped taking the medication on August 12, 2013, with the permission of the prescribing physician, because it made her feel anxious, angry and hostile.

Mother stated that she began requesting mental health assistance in 2001, because "I knew something was wrong with me." At that time she was depressed, unable to sleep, and in an emotionally abusive relationship. She was taken to an emergency room for suicidal ideation and placed on a 72-hour hold. Mother said that she then took Paxil and received individual counseling for approximately one year. Mother began receiving mental health services on August 7, 2013. She tried but failed to find appropriate ways to release her stress and anger.

On September 29, 2013, the social worker interviewed Aiden. He said that mother "always gets angry" and "I have to remind her not to get angry." He said that mother disciplines him and A.A. by putting them in a corner and "spanks us a lot with a belt" on their buttocks, which he said hurt "a little." He also said that mother hit them on their buttocks with an open hand.

The maternal aunt reported that A.A. had tantrums, banged his head, and threw himself on the floor. Mother was making an attempt to manager her behavior more appropriately during her visits with the children.

On August 14, 2013, DCFS filed a petition in regard to the children pursuant to section 300, subdivisions (a) [serious physical harm], (b) [failure to protect] and (j) [abuse of sibling]. The children were ordered detained. On October 15, 2013, a jurisdiction and disposition hearing was held. The court dismissed the subdivision (a) count, but sustained the subdivisions (b) and (j) counts. The children were declared dependents, were removed from mother's custody and were place with their maternal aunt; monitored visits were ordered for mother. The court also ordered mother to participate in individual and anger management counseling, parenting classes, and to obtain an assessment for psychotropic medication. In addition, the court ordered play therapy for the children.

On October 28, 2013, mother filed a timely notice of appeal.

5

*Standard of Review*

Jurisdictional findings are reviewed for substantial evidence. (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.) Where the appellant challenges the sufficiency of the evidence, the reviewing court must start with the presumption that the record contains sufficient evidence to support the judgment; it is the appellant's burden to demonstrate otherwise. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.) The reviewing court must "view the evidence in the light most favorable to the trial court's order, drawing every reasonable inference and resolving all conflicts in support of the judgment. (*In re Marina S.* (2005) 132 Cal.App.4th 158, 165.) The trier of fact determines the credibility of witnesses, weighs the evidence, and resolves factual conflicts. (*In re Daniel G.* (2004) 120 Cal.App.4th 824, 830.) An appellate court does not reweigh the evidence. (*Ibid*.) If substantial evidence, contradicted or uncontradicted, supports the judgment, it must be affirmed. (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 630-631.)

*Discussion*

1. *There was Substantial Evidence to Support the Juvenile Court's Decision Assuming Jurisdiction over the Children.*

Section 300, subdivision (b), describes a child who "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left, or the willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, development disability or substance abuse."

Section 300, subdivision (j), describes a child whose "sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e) or (i), and there is a substantial risk that the child will be abused or neglected as defined in those subdivisions. The court

6

shall consider the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other factors the court considers probative in determining whether there is a substantial risk to the child."

On October 15, 2013, the juvenile court sustained the section 300 petition filed by the DCFS under subdivisions (b) and (j) as follows:

"On 8/10/13, the children Aiden G[.] and [A.A.]'s mother, C[.]A[.] physically abused the child, A[.A.] by forcibly grabbing the child's arm and throwing the child on a bed. The mother grabbed child by the shirt and violently threw the child across the floor. The mother repeatedly grabbed and yanked the child's arm. The mother held a blanket over the child's face for approximately twenty seconds. Such physical abuse was excessive and caused the child unreasonable pain and suffering. On 8/10/13, the mother was arrested for Willful Cruelty to a Child. Such physical abuse of the child by the mother endangers the child's physical health and safety, placing the child and the child's sibling Aiden at risk of physical harm, damage, danger, and physical abuse."

We find that substantial evidence was presented to the juvenile court sufficient to sustain the allegations under subdivisions (b) and (j) of section 300. Mother had unresolved mental health and anger problems. She was depressed, overwhelmed, and frustrated, and could not control her anger. In 2001, mother began requesting mental health assistance because "I knew something was wrong with me." At that time, she was hospitalized under a 72-hour psychiatric hold for suicidal ideation and anxiety, for which she took Paxil and received individual counseling for approximately one year. Subsequently mother took Lexapro for unresolved issues regarding past abuse by her mother. During the investigation by the DCFS subsequent to the referral, mother spoke about feeling hopeless. Her present diagnosis is a depressive disorder. She acknowledged that she would benefit from mental health services and needed help with her parenting skills.

Mother told a social worker, "I know I am angry, and I am angry with my children, but I do not know why." According to maternal aunt, mother had a short temper, often had problems with people and was previously diagnosed as manic-depressive. Four-year-old Aiden reported that mother "always gets angry" and "I have to remind her not to get angry." Mother stated that she had failed to find appropriate ways to release her stress and anger. She admitted that she took her frustration out on the children and did not know how to control A.A. when he had a tantrum. This later admission was abundantly apparent when mother's conduct at the hospital placed one-year-old A.A. at risk of harm. Nurse Field and Ms. D. witnessed separate incidents of mother's behavior toward A.A.

The foregoing evidence fully supports the juvenile court's finding that Aiden and A.A. were at substantial risk of physical harm as set forth in section 300, subdivisions (b) and (j).


2. *There was Substantial Evidence to Support the Dispositional Order Removing the Children from Mother's Custody.*

Removal decisions are reviewed by the appellate court according to the "substantial evidence" standard. (*In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1654.) In juvenile cases, as in other areas of the law, the power of an appellate court begins and ends with a determination as to whether there is substantial evidence, contradicted or not, which will support the conclusion of the trier of fact. All conflicts must be resolved in favor of the respondent and all legitimate inferences indulged in to uphold the verdict or judgment, if possible. Where there is more than one inference that can be reasonably deduced from the facts, the appellate court must not substitute its deductions for those of the trier of fact. (*In re David H.* (2008) 165 Cal.App.4th 1626, 1633; *In re Katrina C.* (1988) 201 Cal.App.3d 540, 547.)

The same evidence that supports the jurisdictional findings supports the court's removal order. Mother asserts that all of the court-ordered requirements placed upon her could have been accomplished without disturbing custody of the children, because her

new medication could have alleviated the anger management issues. Mother's seeming reliance solely on a psychotropic drug, about which little evidence was presented, to keep the children safe while she participates in services in misplaced. Mother has unresolved mental health and anger issues. She was angry at her two very young children and did not know why. She took her frustration out on her children, often hitting them with a belt. Mother's conduct at the Beverly Hospital was a frightening public display of her behavior when frustrated. The fact that while in a public place, with witnesses present, she would engage in such violent conduct against a toddler is extremely concerning, as it demonstrates a total lack of control on her part. The court found that these problems were so severe that the children would be at risk of harm if they were not removed from mother's custody until they were resolved. Substantial evidence supports the juvenile court disposition order.

*Disposition*

The jurisdictional and dispositional orders of the juvenile court are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

MINK, J.[*]

We concur:

TURNER, P.J.                    KRIEGLER, J.

---

[*]     Retired judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9