Filed 6/30/22  In re K.D. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re K.D., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, Plaintiff and Respondent, v. K.D., Defendant and Appellant. | E077212 (Super.Ct.No. J288887) OPINION |

APPEAL from the Superior Court of San Bernardino County.  Bryan K. Stodghill, Judge.  Affirmed as modified.

Michaela Dalton, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Daniel Rogers, Acting Assistant Attorney General, Kristen Kinnaird Chenelia and Britton B. Lacy, Deputy Attorneys General, for Plaintiff and Respondent.

1

A juvenile wardship petition was filed alleging that defendant and appellant K.D. (minor) committed attempted second degree robbery (Pen. Code,[1] §§ 664, 211, count 1), assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4), count 2), and criminal threats (§ 422, subd. (a), count 3). On May 10, 2021, a juvenile court found counts 1 and 3 true and found count 2 not true. On May 24, 2021, the court declared minor a ward of the court and placed him in the custody of his guardian, to be maintained in her home on terms of probation. The court found the maximum period for physical confinement to be three years eight months.

On appeal, minor contends: (1) there was insufficient evidence to support the court's true findings since the victim's in-court identification of him was insufficient to establish beyond a reasonable doubt that he was the perpetrator; and (2) the juvenile court erred in setting the maximum term of confinement since minor was not removed from the custody of his guardian. The People concede, and we agree, that the maximum term of confinement should be stricken. Otherwise, we affirm.

## FACTUAL BACKGROUND

M.B. (the victim) worked as a custodian at a church in San Bernardino. On March 23, 2021, about 9:30 p.m., she left work and walked to her car parked right outside the building. As soon as she left the building, three males rushed at her. All three of them were dressed in black and wearing masks. One of them stood in front of the other two

_____

[1] All further statutory references will be to the Penal Code unless otherwise noted.

2

and was holding a knife. The individual with the knife ripped off his mask. He shoved the knife at the victim and pushed her to the corner of the building. He told her to hand over her purse or he would kill her. The other two also threatened the victim and demanded that she give them her purse, but she never saw their faces. The victim screamed, pounded on the glass door, and called for her coworker inside, "Phil, Phil, I need help." The three males repeatedly told her to shut up or they would kill her. Then, all of a sudden, they turned around and took off running. The victim grabbed the keys on the side of her belt and unlocked the building door. She found Phil and told him someone tried to rob her. Phil called 911.

At trial, when asked how old the three males looked, the victim testified, "I could only see the guy that was in the front. And the only way I knew what he looked like is because he ripped his mask off." The victim identified minor in court as the person who was in front holding the knife.

On cross-examination, the defense attorney asked the victim how close the three men were when they first approached her and suggested five or six feet. The victim said she did not know how far five or six feet was and just said, "they were right on me," and "They were close." The defense attorney then asked how long the incident lasted, from the time she first saw the three assailants to the time they ran away. She said it was probably 10 minutes. The defense attorney asked how long minor had his mask off. The victim said, "Well, he had his mask on at first. When he came at me, he just ripped it off. So he had it off." The victim added, "He was right on me. The guy was right on me. I know what he looks like." The defense attorney noted that the victim was focused on

minor and the knife he was holding, and asked if the victim was also focused on the other two men. She said, "I wasn't really focusing on them, sir. I was focusing on the guy who had the knife and that was in front of me."

Defense counsel also asked about the meetings the victim had with the police concerning the incident. The victim testified that at the first meeting, she described the person holding the knife as a Black male adult, and told the officer he was probably in his 20's. Defense counsel asked if she remembered giving a description at the second meeting with the police, and the victim stated she told the officer he "was a young man that was well-groomed with short hair" and also described him "as a dark-skinned male." Defense counsel asked if the police ever showed her any photo lineups with potential suspects, and she said no.

On redirect examination, the prosecutor asked how close the person with the knife got to her, and she indicated that he was about two feet away from her face. The prosecutor asked if she got a good look at him, and she said, "Oh, yes, ma'am." The prosecutor asked whether she was sure the person in court was that person, and she said, "Yes." The prosecutor asked, "How sure?" and the victim said, "I'm sure."

The prosecutor played a recording of the 911 call made on the night of the incident and submitted into evidence the transcript of the call. On the call, Phil described the perpetrators as three young Black guys. When the operator asked how old they were, the victim, who was also on the call, said they were "18, 19, 20." The victim also said, "They could have killed me . . . so scared! I'm walking out and I'm just kind of like going to my car and then they just jump down from the stairs and they pushed me against

4

the wall [unintelligible] butcher knife . . . I don't know if the other two had knives or not I just know the one did. He had a mask on and then he pulled it off. [unintelligible] and then he said 'give me your purse.' And I just [unintelligible] and then I just start screaming."

DISCUSSION

### I. There Was Sufficient Evidence to Support the Court's True Findings

Minor contends there was insufficient evidence to support the court's true findings. He asserts that the critical issue was the identity of the perpetrator, and the evidence consisted of only a single witness's in-court testimony that he was the one who committed the crimes. Minor claims there are two issues: (1) the true findings are not supported by substantial evidence; and (2) the evidence was insufficient as a matter of law to satisfy the prosecution's burden of proof, since "more was needed to inspire confidence in the truth of [the] accusations and to overcome the doubts created by the omission of crucial facts—namely, whether the victim had identified [him] previously outside of the suggestive courtroom environment." We conclude the evidence was sufficient to identify minor as the perpetrator.

A. *Standard of Review*

"[I]n considering a claim of insufficiency of the evidence, appellant has a heavy burden in demonstrating that the evidence does not support the juvenile court findings. [Citation.] An appellate court must review the whole record in the light most favorable to the judgment in order to determine whether it discloses substantial evidence that a reasonable trier of fact could find the essential elements of the crime beyond a reasonable

5

doubt." (*In re Ricky T.* (2001) 87 Cal.App.4th 1132, 1136 (*Ricky T.*).) "We must presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence [citation] . . . ." (*In re Jose R.* (1982) 137 Cal.App.3d 269, 275.) In addition, "we must make all reasonable inferences that support the finding of the juvenile court." (*Ibid.*) "If the circumstances reasonably justify the verdict, we will not reverse simply because the evidence might reasonably support a contrary finding. This standard applies to cases based on circumstantial evidence. [Citation.] The testimony of just one witness is enough to sustain a conviction, so long as that testimony is not inherently incredible. [Citation.] The trier of fact determines the credibility of witnesses, weighs the evidence, and resolves factual conflicts. . . . On appeal, we must accept that part of the testimony which supports the judgment." (*In re Daniel G.* (2004) 120 Cal.App.4th 824, 830 (*Daniel G.*).)

B. *The Evidence Was Sufficient*

In the instant case, " 'there is in the record the inescapable fact of in court eyewitness identification. That alone is sufficient to sustain the conviction.' " (*In re Gustavo M.* (1989) 214 Cal.App.3d 1485, 1497.) The victim testified that she knew what the person who came at her with the knife looked like because he ripped his mask off immediately, and the encounter lasted approximately 10 minutes. She definitively identified minor in court as the perpetrator. The victim testified that he was about two feet away from her face. She confirmed that she got a good look at him, and that she was very sure he was the perpetrator. It is well established that the "[t]he uncorroborated testimony of a single witness is sufficient to sustain a conviction, unless the testimony is

6

physically impossible or inherently improbable." (*People v. Scott* (1978) 21 Cal.3d 284, 296 (*Scott*); see *People v. Young* (2005) 34 Cal.4th 1149, 1181.) The details of the victim's testimony were not inherently improbable and were not impeached on cross-examination. Furthermore, nothing in the record suggests her testimony was physically impossible. (*See Scott*, at p. 296.)

Moreover, "[i]t is for the trier of fact and not this court to determine the credibility of witnesses." (*People v. Hughes* (1969) 271 Cal.App.2d 288, 291 (*Hughes*).) The court here found the victim credible and reliable and noted she was absolutely certain that minor was the person who attempted to rob her.

Minor contends the victim's in-court identification was insufficient since the prosecution did not present additional evidence concerning the circumstances of the identification (e.g., whether the victim previously identified minor). He claims that the prosecution withheld "crucial information necessary to determining the identification was accurate" and thereby "effectively lowered its burden of proving guilt beyond a reasonable doubt." However, contrary to minor's claim, the prosecution was not required to present evidence or information about the circumstances of the identification to allow the court to conclude the identification was reliable.[2] (*Scott*, *supra*, 21 Cal.3d at p. 296;

---

[2] Although not part of the juvenile court's basis for its decision, we note the record shows the probation officer's disposition report was filed with the court prior to the jurisdiction hearing. The court acknowledged it had received the report, as it noted the recommendation was for formal probation. The report states that the victim's coworker heard about the robbery from her daughter, who was friends with minor. The daughter said minor was bragging about robbing a janitor at church, and she showed the

*[footnote continued on next page]*

See *In re Gustavo M.*, *supra*, 214 Cal.App.3d at p. 1497 [an in-court identification alone is sufficient to sustain a conviction]; *In re Robert V.* (1982) 132 Cal.App.3d 815, 821 [" '[t]he testimony of a single witness is sufficient to uphold a judgment even if it is contradicted by other evidence, inconsistent or false as to other portions.' "].)

Furthermore, defense counsel was given an ample opportunity to explore the circumstances of the identification during cross-examination and to elicit any evidence at trial disproving minor's identity as the perpetrator. During closing arguments, defense counsel asserted that this was "an ID case" and argued that the trauma the victim went through during the incident raised doubts about the veracity of the identification of minor. He also stated the police never attempted to show the victim photo lineups, and he questioned how the victim made her identification. Counsel argued the evidence was insufficient to prove minor was the perpetrator beyond a reasonable doubt. The prosecution responded that the victim's in-court identification was credible for numerous reasons, including that her story at trial was consistent with what was reported on the 911 call.

In issuing its ruling, the court acknowledged there was no testimony as to how minor was identified as a suspect and if there was a prior identification and said it would

victim a picture of him. The victim recognized minor as the person who had robbed her and then contacted the police. The police subsequently arrested minor.

Additionally, the People's bench brief and motions in limine stated that the victim's coworker showed the victim photos from minor's social media account because the coworker's daughter had said minor was bragging about robbing a janitor at church at about the same time as the incident. The bench brief says the victim immediately recognized minor in the photos as the perpetrator and when she showed the police the pictures, she said she was "100%" sure that it was minor who tried to rob her.

"assume that there is a story behind that." The court then stated that it heard evidence "from a witness who indicated that the minor was the perpetrator of the crime," and "[w]hen asked about whether or not she was sure, she said that was him." It remarked that it had to look at the veracity of the witness and determine if she was reliable. The court observed that the victim's testimony was consistent, that she did not want to testify but had to be subpoenaed, and that she had no apparent bias against minor. It then pointed out that the victim had five to 10 minutes to interact with and look at the perpetrator during the incident, and that was a sufficient amount of time to notice what a person looks like. The court also observed the victim was asked several times if minor was the perpetrator, and she said he was. The court found the victim's identification established beyond a reasonable doubt that minor committed the crimes.

In sum, the issue of credibility of the witness was for the juvenile court to decide and not this court. (*Hughes*, *supra*, 271 Cal.App.2d at p. 291; *Daniel G.*, *supra*, 120 Cal.App.4th at p. 830.) Viewing the whole record in the light most favorable to the judgment, as we must, we conclude the evidence was sufficient to support the court's true findings. (See *Ricky T.*, *supra*, 87 Cal.App.4th at p. 1136.)

## II. The Maximum Term of Confinement Should Be Stricken

Minor was declared a dependent and placed in the custody of his aunt under specified probation conditions. He argues that the court erred in setting a maximum term of confinement when he was not removed from the physical custody of his guardian. Respondent concedes, and we agree.

9

When a minor is removed from the physical custody of a parent or guardian under a wardship order, the order must specify the maximum term of confinement. (Welf. & Inst. Code, § 726, subd. (d).) However, the Welfare and Institutions Code does not authorize a juvenile court to specify a maximum term of confinement when a minor is not removed from the physical custody of his parents or guardian. The court here sustained minor's petition and placed him in the custody of his guardian on probation and found the maximum custody time to be three years eight months. The court erred in including the maximum term. (*In re A.C.* (2014) 224 Cal.App.4th 590, 591-592.) "[W]here a juvenile court's order includes a maximum confinement term for a minor who is not removed from parental custody, the remedy is to strike the term." (*Ibid.*) Thus, we will strike the term.[3]

## DISPOSITION

The maximum confinement term is stricken from the juvenile court's order. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS
J.

We concur:

CODRINGTON
Acting P. J.

SLOUGH
J.

---

[3] Because we will strike the maximum term, we need not address minor's alternative claim that we should reduce the maximum term to two years.