Filed 12/23/14  P. v. DeRosas CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>      v.<br><br>JESUS DEROSAS,<br><br>    Defendant and Appellant. | G049592<br><br>(Super. Ct. No. 11CF3037)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Carla M. Singer, Judge.  Affirmed.

Richard Schwartzberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Robin Urbanski and Teresa Torreblanca, Deputy Attorneys General, for Plaintiff and Respondent.

\*      \*      \*

Defendant Jesus DeRosas and his codefendant Oscar DeRosas were jointly charged with attempted murder (Pen. Code, §§ 664, subd. (a), 187, subd. (a)),[1] assault with a firearm (§ 245, subd. (a)(2)), and street terrorism (§ 186.22, subd. (a)). Defendant was separately charged with possession of a firearm by a felon (former § 12021, subd. (a)(1)),[2] while Oscar was separately charged with possession of a firearm by a probationer.

The jury convicted defendant of assault with a firearm, possession of a firearm by a felon, and street terrorism.[3] The jury found true the gang enhancement as to the assault with a firearm and possession of a firearm offenses. (§ 186.22, subd. (b).) Defendant admitted suffering a prior strike conviction and a prior serious felony conviction.

The court sentenced defendant to a prison term of 18 years, comprised of eight years for assault with a deadly weapon (double the upper term), five years for the associated gang enhancement, and five years for the prior serious felony conviction. The court stayed execution of sentence for possession of a firearm and street terrorism.

On appeal defendant contends insufficient evidence supports his conviction for firearm possession by a felon. We disagree with that assessment and affirm the judgment.

---

[1] All statutory references are to the Penal Code.

For convenience and to avoid confusion, we refer to Jesus DeRosas as "defendant," and we generally refer to codefendant Oscar DeRosas, witness Gary Montoya, witness Irma de la Cruz, and victim and witness David Montoya by their first names. We mean no disrespect.

Oscar is not a party to this appeal.

[2] Section 12021 is now section 29800, subdivision (a).

[3] The court declared a mistrial on the attempted murder charge after the jury was unable to reach a verdict.

FACTS

On the evening of October 13, 2011, Gary Montoya was collecting recyclables from a trash can outside a Laundromat near the La Carreta Market on Hewes Street in the City of Orange. Defendant and a younger male approached Gary. Defendant wore a white shirt, while the "kid" with him wore a long sleeve dark flannel shirt. The kid was slightly taller than defendant.

Gary knew defendant by the moniker "Wicked." Defendant had "hit up" Gary many times before. Gary saw a bulge under defendant's white shirt, which Gary presumed was a gun.

Defendant asked Gary where he was from. Gary said, "Modena," meaning Varrio Modena Locos, a criminal street gang. Defendant said, "Puro Pearl," meaning Pearl Street, Modena's rival gang. The younger man said something about the police, and the pair took off.

Gary surreptitiously followed them on his bicycle. When Gary turned the corner, he saw the men standing in the middle of Pearl Street near Hewes Street.

Gary's brother, David, and David's girlfriend, Irma, were coming up Hewes Street and crossed the street toward a convenience store. Defendant and the other man yelled "Pearl Street and all this other shit."

According to Gary's pretrial police interview (a DVD of which was played for the jurors, who also had a transcript), defendant raised his hand and fired a gun at David, striking him in the chest. Also, on the day after the shooting, an officer interviewed Gary and showed him a series of photographs. Gary identified defendant as the shooter.

Another witness, Ricardo Araiza, told police that the man in a white shirt was the shooter. On the date of the shooting, Araiza was in his front yard at the corner of Hewes and Pearl Street. Araiza saw two Hispanic men walk across the street. One was a

3

little taller than the other — one was about 5 feet 9 inches tall, while the other was around 5 feet 10 inches tall. The shorter man wore a white t-shirt, while the taller one wore a dark colored shirt that might have been a sweatshirt. The two men started yelling at a couple who were walking on Hewes Street. The men ran toward the couple and confronted them. Araiza saw the man in the white shirt fire a gunshot at either the male or the female. Araiza heard the woman scream. Araiza described the gun to the police as a black nine or .40 millimeter handgun.

According to Irma's trial testimony, however, it was the taller man who pointed a gun at David. David and the shorter man began punching each other, and David fell to the ground. In order to scare the men, Irma screamed that a "cop" was coming. The taller man lowered the gun, looked around, and then raised the gun again. The gun went off, and the two men ran away. Irma testified she did not see either of the men present in the courtroom.

An officer interviewed David, the victim, at the hospital. David told the officer that there was a taller female standing behind the two males during the incident, that one man pushed him, knocking him off balance, and that the other man pointed a gun at him and shot him. David told the officer that if he (David) were to cooperate, something could happen to him, his kids, or Irma.

In a police interview, Gabrielle Harris stated she was with defendant and Oscar in the La Carreta Market parking lot near Hewes Street and Chapman Avenue in the City of Orange. Defendant and Oscar saw a man on a bicycle and went after him. After they left the man on the bicycle, they had a confrontation with another man and a woman who were walking on Hewes Street. The man yelled out "Modena." Defendant and Oscar yelled, "Pearl Street," and ran across the street to confront the man. Defendant kicked the man, the man pushed defendant, and then defendant punched the man. "They thought the victim was reaching for something in his waistband; and that's when the shot took place." Harris refused to tell the police whether it was defendant or Oscar who fired

4

the shot. During a break in Harris's trial testimony, Harris blurted out to an Orange County district attorney's investigator, "You have the wrong guy," "Jesse did not shoot," and "Oscar was the shooter."

A gang expert testified at trial that at the time of the shooting, the Modena and Pearl Street gangs were engaged in a turf war. Pearl Street was trying to expand and take over Modena's entire claimed territory. The area where the shooting took place was in Modena's claimed turf. In the three-year period before the shooting, Pearl Street members had committed five to seven assaults with deadly weapons or attempted murders against Modena members.

Defendant and Oscar were members of Pearl Street. Defendant's moniker is Wicked. Oscar is Silent. Oscar is younger and taller than defendant. David was an active member of Modena at the time of the shooting, while Gary was affiliated with Modena.

The gang expert explained that guns are "typically shared within the gang by fellow gang members." This type of gun is called a "gang gun" and is owned or possessed by the entire gang. When asked whether he had any information about whether the gun used to shoot David was a gang gun, the expert testified that some text messages had talked about Oscar passing the gun to Franco Vieyra, a fellow Pearl Street member. The expert opined that a hypothetical shooting like the one here would benefit Pearl Street.

DISCUSSION

*Substantial Evidence Supports Defendant's Conviction of Possession of a Firearm by a Felon*

Under former section 12021, subdivision (a)(1), a felon "who owns, purchases, receives, or has in his or her possession or under his or her custody or control

any firearm is guilty of a felony." Defendant asserts the People's sole theory at trial was that Oscar was the shooter, while defendant constructively possessed the gun fired by Oscar. Defendant concludes he could be convicted of possession of a gun by a felon only if he had "custody or control" of the firearm. He contends the evidence was insufficient to show he (1) knew Oscar had the gun or (2) had the right or ability to jointly control its use.

"Possession may be actual or constructive. Actual possession means the object is in the defendant's immediate possession or control. A defendant has actual possession when he himself has the weapon. Constructive possession means the object is not in the defendant's physical possession, but the defendant knowingly exercises control or the right to control the object. [Citation.] Possession of a weapon may be proven circumstantially, and possession for even a limited time and purpose may be sufficient." (*In re Daniel G.* (2004) 120 Cal.App.4th 824, 831.)

In reviewing a case for sufficiency of the evidence, an appellate court determines whether "'on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt.'" (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) The appellate court views "the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Jones* (1990) 51 Cal.3d 294, 314.)

The prosecution's theory at trial was that either defendant *or* Oscar was the shooter. The People presented evidence, as summarized in our factual recitation above, for both these scenarios. In his opening brief, defendant omits *all* of the evidence that he fired the gun. By failing to include all "significant facts" as required by California Rules of Court, rule 8.204(a)(2)(C)), he has waived the alleged error. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881; *Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 737-738.)

6

The prosecutor's closing statement did not theorize that only Oscar could be the shooter. In his opening and closing statement, the prosecutor told the jurors that "one of these two defendants shot that man," but "it didn't make a difference whether or not you decided it was Oscar or it was [defendant who] fired the gun, because both of them were, in the end, equally liable for" the charges against them. The prosecutor advised the jurors to decide why some witnesses gave trial testimony that differed from their statements to the police at the time of the shooting. The prosecutor argued that Irma (who testified the taller man had the gun) had "a consistent story" that appeared unbiased, but that Araiza (who told police the man in the white shirt was the shooter) also seemed unbiased and that Gary (who told police that defendant was the shooter) had reasons for declining to tell the truth at trial, such that his initial statement to police made the most "sense." The prosecutor acknowledged there was "a good chance" Gary and Araiza were mistaken, "given their distance to the altercation itself."

The prosecutor began his discussion of the specific charges by stating: "And I know from the People's perspective I've argued to you that it doesn't make a difference who the shooter was. It does make it easier when we're talking about it to identify who is probably the shooter. And it certainly helps in terms of your discussions to start off with somebody and then, from there, progress through the discussion. If at some point you decide, . . . we disagree, you can flip-flop who the shooter was and you can get to the same result. So, for this purpose, let's assume that Oscar DeRosas is the shooter. [¶] And there's somewhat good reason for it based on the fact that the two witnesses who were present, immediately there when the shooting happens, Irma De La Cruz . . . matches Oscar, and . . . Gabrielle Harris basically says that Oscar DeRosas was the shooter."

7

The prosecutor argued three alternative theories of liability for defendant and for Oscar, consisting of actual possession by one of them, while the other person aided and abetted the gun possession or constructively possessed the gun within the meaning of the court's instructions. Thus, the prosecutor properly laid out for the jury the evidence and the jurors' options. Contrary to defendant's argument, this is not a case like *In Re Sakarias* (2005) 35 Cal.4th 140, where two coparticipants in murder were tried in separate trials, and the prosecutor improperly argued, intentionally and in bad faith, "inconsistent and irreconcilable factual theories" in the two separate trials by manipulating and omitting evidence (*id.* at p. 145; *id*. at pp. 154-156).

Here, substantial evidence supported a finding defendant actually possessed the gun. Araiza and Gary made that statement to the police in the aftermath of the shooting. Thus, even if we were to conclude the evidence was insufficient to support the constructive possession and/or aiding and abetting theories as to defendant (which we do not), we would still affirm the judgment. In cases where "the jury has merely been 'left the option of relying upon a *factually* inadequate theory'" (*People v. Guiton* (1993) 4 Cal.4th 1116, 1128), "reversal is not required whenever a valid ground for the verdict remains, absent an affirmative indication in the record that the verdict actually did rest on the inadequate ground" (*id*. at p. 1129).[4]

---

[4] The jury was instructed that its verdict had to be unanimous as to each defendant and each charge.

DISPOSITION

The judgment is affirmed.

IKOLA, J.

WE CONCUR:

RYLAARSDAM, ACTING P. J.

ARONSON, J.