Filed 4/6/23  P. v. Hume CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C094670 |
| Plaintiff and Respondent, | (Super. Ct. No. 20FE007139 & 20FE007453) |
| v. | |
| PAUL HUME, | |
| Defendant and Appellant. | |

Defendant Paul Hume pushed a man away from an ATM and then took the man's debit card from the ATM and left.  The trial court instructed the jury on robbery only and not the lesser included offense of theft; the jury found defendant guilty.  On appeal, defendant contends the trial court erred in not instructing on the lesser included offense because there was substantial evidence he either did not use force or fear or that his intent to steal did not arise until after his use of force or fear.  Defendant also argues some of the fines imposed by the trial court at sentencing were vacated by Assembly Bill No. 1869 (2019-2020 Reg. Sess.) (Stats. 2020, ch. 92, § 25) (Assembly Bill 1869).

1

We affirm, finding that while the trial court did err in not instructing the jury on the lesser included offense of theft, the error was harmless because of the overwhelming evidence defendant committed a robbery. We also find the trial court never imposed the fees defendant challenges.

## BACKGROUND

Defendant was charged with robbery (Pen. Code, § 211),[1] with an allegation he committed the offense while released from custody on another offense (§ 12022.1), and with misdemeanor resisting arrest (§ 148, subd. (a)(1)).

The victim, Kevin C., testified he was at an ATM when he saw a man walk quickly towards him. Kevin C. had left his car running and in response to the man approaching, he abandoned the ATM mid-transaction to take his keys out of his car's ignition. When he came back to the ATM the man was standing in front of the machine. Kevin C. had already put his debit card in the ATM and believed he had entered his PIN before leaving for his car. The man asked Kevin C. to give him the PIN and asked him for money, so Kevin C. tried to push the man out of the way and the two "tussled."

The surveillance video from the ATM was played at trial. The video showed Kevin C. using the ATM, looking around, and then leaving the screen. A few seconds later, a man Kevin C. later identified as defendant approached the ATM with food in his arms. As defendant touched the ATM, Kevin C. returned. Defendant is seen eating a sandwich and touching the ATM while Kevin C. is smiling and talking with defendant. Defendant then looked at Kevin C. and said something. Both men then reached for something at the ATM and defendant pushed Kevin C. out of the frame of the surveillance camera. Kevin C. is seen briefly holding onto the edge of the ATM before completely leaving the frame.

---

**1**    Undesignated statutory references are to the Penal Code.

As seen in the video, defendant is then alone at the ATM for over a minute. During this time, defendant is holding various food items in his left arm and touching the ATM with his right hand, he then switched the items to his right arm, touched the ATM with his left hand, picked food out of his mouth with his left hand, took a card from the machine with his left hand, and then left the ATM. He also maintained a neutral expression throughout the time he was alone at the machine.

In his testimony, Kevin C. explained why on the video, he looked like he was laughing: defendant "had made a comment, kind of like about my appearance and he was kind of talking to himself as well." But then defendant "put his hand over where you insert your card, so that's why – he's like asking me to enter my pin or to give him some money" and put his hand over the card slot. Kevin C. said at this point it felt like "he was trying to rob me, like he's trying to take my money," and Kevin C. felt "attacked" and afraid "[b]ecause a stranger walked up to me while I'm using the ATM and is asking me for my pin and asking me for my money." Defendant had also said, " 'Just give me the money. It doesn't have to be all of it. Just give me half.' "

Kevin C. also testified defendant gave him a "pretty hard shove" in front of the ATM. During this interaction, Kevin C. had cancelled the ATM transaction and was trying to get in front of defendant to get his debit card back, but instead of fighting defendant after the hard shove, Kevin C. left and walked to the front of the bank to see if it was open. When he discovered it was not, he called 911.

Kevin C.'s 911 call was played in court. Kevin C. told the operator "[h]e's at the ATM trying to take my debit card. . . . I was using the ATM and some homeless man pushed me out the way" and then "he pretty much ran up to me while I was using it and pushed me out the way and now he's – he took off with my debit card." Kevin C. is also heard saying to someone "[t]hey're on their way and I already locked my card. Fuck you."

Kevin C. testified he was talking to defendant who "had said some stuff as he was walking away. It was kind of inaudible. Essentially I was telling him that I had just went on my phone and locked my card so there is nothing he could do with it, and I was letting him know the cops were also on his [*sic*] way." Kevin C. then saw defendant walk away and sit on a nearby hill and continued to eat his food; it did not appear he was trying to run away or hide.

On cross-examination, Kevin C. clarified he had not yet entered his PIN when defendant came up to the ATM. Also, he did not speak with defendant when he initially came back to the ATM. It appeared to Kevin C. defendant was just pressing buttons, eating a burger, and talking to himself before he asked Kevin C. for his PIN. This is when Kevin C. reached to hit cancel on the ATM screen, they both reached for his debit card at the same time, but Kevin C. realized "it's not worth it to fight him for a debit card that I can shut off on my phone." Kevin C. affirmed he never hit defendant and said he believed defendant had taken his debit card during their tussle and was just standing there with the card when he was alone in front of the ATM. Defense counsel asked why Kevin C. told the 911 operator defendant was "trying to take my card," instead of saying defendant already had his card and Kevin C. responded, "[j]ust a mix up of words, I guess."

Police officers arrived and found defendant sitting on a grassy hill near the bank. According to their testimony, the officers attempted to detain him, but defendant resisted. The officers eventually arrested defendant and found Kevin C.'s debit card on him.

Defendant testified nobody was at the ATM when he approached so he thought it was available. He said he wanted to make a "cardless transaction, I wanted to see what was available on that machine." Defendant said he was just eating his food when Kevin C. came up next to him. He did not speak with Kevin C. nor ask him for money or for his PIN. When Kevin C. is seen reaching for something, defendant said there was no debit card in the machine, so he struggled with Kevin C. because "he was invading my

4

space. I didn't really know what was going on." Defendant said Kevin C. "began to struggle with me and I pushed back, he then struck me." But defendant also testified to never pushing Kevin C. After Kevin C. left, defendant said, "[a]t this point I'm understanding what is occurring and I notice that he does have an ATM card in the machine." He then ejected the debit card, walked away from the machine, and asked Kevin C. whether the debit card was his. This is when Kevin C. swore back at defendant while on the phone with 911. Defendant "just thought he said he was calling police and I was like okay, we will figure it out then. . . . I knew there was a lawn nearby and I went and sat down and waited – finished eating while the police came."

After the close of evidence, the trial court discussed jury instructions with the parties and stated: "Neither party requested any lesser included offenses and it's the Court's position that although I have a sua sponte obligation regardless of the request of the parties to include lesser included offenses that are supported by evidence on the record, the Court finds no evidence on the record to support any lesser included offenses in this case. [¶] The Court can come up with no theory by which the jury could use the evidence on the record to find the defendant guilty of any other crimes. They would have to speculate and the Court does not wish to invite them to speculate. [¶] Therefore, . . . if the jury believes the victim and not the defendant, they are likely to convict and if they believe the defendant and not the victim, then they are not going to vote to convict; and there is no real middle ground in this particular case."

The trial court instructed the jury only on robbery for the first charged count. The robbery instruction given required six elements: (1) "defendant took property that was not his own"; (2) "[t]he property was in the possession of another person"; (3) "[t]he property was taken from the other person"; (4) "[t]he property was taken against that person's will"; (5) "defendant used force or fear to take the property or to prevent the person from resisting"; and (6) when "defendant used force or fear to take the property, he intended to deprive the owner of the property permanently." The instruction further

5

explained, "defendant's intent to take the property must have been formed before or during the time he used force or fear. If the defendant did not form this required intent until after using the force or fear, then he did not commit robbery."

The trial court also gave the jury the general instruction stating the jury "may believe all, part, or none of any witness's testimony. Consider the testimony of each witness and decide how much of it you believe."

The jury found defendant guilty of first degree robbery and resisting arrest.

On June 28, 2021, the trial court sentenced defendant to the middle term of four years in prison for robbery, 364 days in jail for resisting arrest, and two years for the section 12022.1 enhancement, stayed pending another case. The trial court also imposed a restitution fine of $1,800 (§ 1202.4), a suspended parole revocation restitution fine of $1,800 (§ 1202.45), two $30 criminal conviction fees (Gov. Code, § 70373), and two $40 court security fees (§ 1465.8). The court waived booking and classification fees (Gov. Code, § 29950.2). The minutes for the sentencing hearing noted the court imposed "ALL FEES, FINES, CONDITIONS AS STATED IN THE PROBATION REPORT PAGES 7-9 AS MODIFIED." These pages in the probation report listed additional fines and fees, including $702 for investigation and presentence report costs and $46 per month for probation department supervision.

## DISCUSSION

## I

### *Lesser Included Instruction*

Defendant contends the trial court committed reversible error when it did not instruct the jury on the lesser included offense of theft because there was evidence defendant committed a theft without force or fear or that any intent to steal was formulated after the physical altercation. The People contend defendant denied any wrongdoing, creating a situation where the jury either believed him or the victim, and left no chance a jury could find him guilty of a lesser offense.

6

A.     *Legal Standards*

A trial court has a duty to instruct the jury sua sponte on all lesser included offenses supported by substantial evidence.  (*People v. Breverman* (1998) 19 Cal.4th 142, 154, 162; *People v. Steskal* (2021) 11 Cal.5th 332, 345.)  Substantial evidence in this context means evidence from which a jury reasonably could conclude the defendant is guilty of the lesser, but not the greater, offense.  (*Breverman*, at pp. 162, 177; *People v. Vargas* (2020) 9 Cal.5th 793, 827.)  Although there is no duty to instruct on a lesser included offense when the evidence supporting such an instruction is weak or based on speculation, instruction is required when the lesser included offense is supported by " ' "evidence that a reasonable jury could find persuasive." ' " (*Steskal*, at p. 345.)  This duty arises even when the lesser included offense is inconsistent with the defendant's trial theories or contrary to the defendant's wishes.  (*Breverman*, at pp. 162-163.)

We review de novo the trial court's failure to instruct on a lesser included offense, considering the evidence in the light most favorable to the defendant.  (*People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1137.)

Theft is a lesser included offense of robbery, where robbery requires "the aggravating circumstances that 'the property is taken from the person or presence of another . . . ' and 'is accomplished by the use of force or by putting the victim in fear of injury.'  [Citation.]  In California, '[t]he crime of robbery is a continuing offense that begins from the time of the original taking until the robber reaches a place of relative safety.'  [Citation.]  It thus is robbery when the property was peacefully acquired, but force or fear was used to carry it away." (*People v. Anderson* (2011) 51 Cal.4th 989, 994.)  The fear required in this context is " ' "sufficient fear to cause the victim to comply with the unlawful demand for his property." ' " (*People v. Collins* (2021) 65 Cal.App.5th 333, 340.)  Similarly, the force for a robbery is sufficient force to overcome the victim's resistance and must be something more than the force " ' "necessary to accomplish the mere seizing of the property." ' " (*People v. Joseph* (2019) 33 Cal.App.5th 943, 951.)

7

For robbery, the evidence must also show "the requisite intent to steal arose either before or during the commission of the act of force. [Citation.] '[I]f the intent arose only after the use of force against the victim, the taking will at most constitute a theft.' [Citation.] The wrongful intent and the act of force or fear 'must concur in the sense that the act must be motivated by the intent.' " (*People v. Marshall* (1997) 15 Cal.4th 1, 34.) However, "if the defendant committed a forcible act against the victim motivated by the intent to steal," the intent requirement for robbery is satisfied "even if the defendant did not also intend for the victim to experience force or fear." (*People v. Anderson, supra*, 51 Cal.4th at pp. 991-992.)

B.      *Analysis*

Defendant's first basis for error, that the trial court should have instructed on theft because the jury could have found no force or fear, must be rejected. The evidence conclusively establishes defendant used force to remove Kevin C. from the ATM. Defendant initially testified to pushing Kevin C. because he was invading his space. Though defendant also later testified he never pushed Kevin C., the video, which we have the benefit of reviewing on appeal, clearly shows defendant pushing Kevin C., who can be seen briefly holding on to the edge of the ATM resisting defendant's force. No instructional error could exist based on the lack of force or fear because there is no substantial evidence supporting any inference defendant did not use force.

There was, however, substantial evidence defendant formed the intent to steal after using force against Kevin C. Defendant testified to this fact, saying he pushed Kevin C. only because he was invading his space. Defendant then spent over a minute at the machine after Kevin C. left. During this time, there was evidence defendant did not realize Kevin C.'s debit card was in the machine. Again, defendant testified to this fact, which could be supported by the video. In the video, defendant did not have the card in his hand when he picked his teeth with his left hand but then did have the debit card in his left hand before he left the machine. It is possible he pulled the debit card out and put

8

it down where it was not visible to the ATM camera, or defendant was trying to log into Kevin C.'s account with the debit card inserted in the machine. But, looking at the evidence in the light favorable to defendant, it is also possible defendant did not realize Kevin C.'s card was in the machine as defendant testified and he did not pull the card out until right before leaving. Kevin C.'s 911 call could also support this inference because he initially told the operator he thought defendant was "trying to take" his debit card, and then later said, "he took off with my debit card." All of this supports defendant's testimony he did not notice defendant's card until right before he decided to walk away with it, which was after he physically removed Kevin C. from the area.

The People contend defendant disclaimed all liability, so the jury would have to have created a theory not argued by either party and to believe defendant's testimony only partially. But this does not eliminate the substantial evidence supporting theft. Jurors are not bound by the theories asserted by the parties. (See, e.g., *People v. Lopez* (2022) 78 Cal.App.5th 1, 19-20 [finding the jury could have rejected the prosecution's theory the defendant acted alone and the defendant's theory he was not present at the scene].) Similarly, jurors are not required to either believe or disbelieve a witness entirely. (*In re Daniel G.* (2004) 120 Cal.App.4th 824, 830 ["As part of its task, the trier of fact may believe and accept as true only part of a witness's testimony and disregard the rest."].) As it was instructed at defendant's trial, the jury was entitled to believe all, part, or none of a witness's testimony. With this freedom, the jury *could* reasonably conclude defendant committed a theft.

C.    *Harmless Error*

This Court must next determine whether the trial court error was harmless. Failing to instruct on a lesser included offense "is not subject to reversal unless an examination of the entire record establishes a reasonable probability that the error affected the outcome." (*People v. Breverman, supra*, 19 Cal.4th at p. 165.) Put another way, we will find prejudicial error only when "it is reasonably probable at least one juror would have

9

rejected the prosecution's inferences and concluded defendant" did not commit the greater offense had they been properly instructed. (*People v. Walker* (2015) 237 Cal.App.4th 111, 118.)

The error here was harmless because there was overwhelming evidence defendant had the intent to steal *before* he used force or fear to take property from Kevin C. The video supports Kevin C.'s testimony, and contradicts defendant's, because it shows defendant looking at Kevin C. and saying something. Shortly after defendant spoke to Kevin C., the two men reached for the screen. Defendant then initiated the physical contact by pushing Kevin C. when he reached for the screen. Defendant then shows no change in demeanor while he is at the ATM by himself and before pulling out Kevin C.'s debit card, including not looking surprised that a debit card was in there. Kevin C.'s version of the events, that defendant asked him for money and his PIN, is significantly more likely from this evidence and contradicts defendant's version, that he was only pushing Kevin C. for invading his space.

Kevin C.'s contemporaneous call with 911 also supports the conclusion defendant formed the intent to steal before the physical altercation. The call was immediately after defendant pushed Kevin C., and Kevin C. told the 911 operator defendant pushed him to get his debit card. He also swore at defendant while on the phone with 911 and said he locked his debit card. To find theft, a juror would have to believe Kevin C. was either lying to 911 or severely misinterpreting defendant's words and actions in the moment. And both scenarios are unlikely given the proximity of the call to the robbery when Kevin C. was still under the stress of the moment. (*People v. Garcia* (1986) 178 Cal.App.3d 814, 820 ["In general, the closer in time the declaration is to the event to which it refers the less likely it is to be the product of reflection and fabrication."].)

Defendant also disclaimed all responsibility. While the jury was entitled to believe him in part, defendant's unequivocal expression of innocence makes it further unlikely the jury would have found him guilty of the lesser. The jury would have had to

pick and choose among the facts to stitch together a scenario where defendant had the intent to steal, but formed this intent only after he physically shoved Kevin C. away from the ATM. As discussed above, there is substantial evidence of this when viewing the evidence in favor of defendant such that a jury *could* convict on theft but not robbery; however, given the strength of the evidence to the contrary, the record supports finding such an outcome is *not a reasonable probability*. The robbery conviction is therefore not the product of prejudicial error given the record and the lawful instructions provided, and we consequently find the instructional error was harmless.

## II

### *Assembly Bill No. 1869 Fees*

Defendant also contends the presentence investigation and report fee, and monthly probation supervision fee, must be vacated under Assembly Bill 1869; the People agree.

We disagree with the parties because the fees defendant challenges were never imposed by the trial court. Typically, "[w]here there is a discrepancy between the oral pronouncement of judgment and the minute order or the abstract of judgment, the oral pronouncement controls." (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385.) The minutes from the sentencing hearing state all fees from the probation report were imposed, but the trial court never stated this at the hearing. Nor are these fees reflected in the abstract of judgment. We, therefore, order the minute order amended to eliminate the reference to the additional fees in the probation report but make no other order.

## DISPOSITION

The judgment is affirmed. The trial court is directed to amend its minute order to accurately reflect the fees imposed by oral pronouncement at the sentencing hearing.

_____\s\_____,
McADAM, J.*

We concur:

_____\s\_____,
DUARTE, Acting P. J.

_____\s\_____,
KRAUSE, J.

---

\*      Judge of the Yolo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.